UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AMELIA HERNANDEZ, EDITH HERNANDEZ
ROJAS, JUAN EDUARDO HERNANDEZ,
individually and on behalf of other persons similarly
situated who were employed by ENJOY FOOD
CORP. d/b/a C-TOWN, IMMORTAL RISE, INC.
d/b/a C-TOWN and AHMAD SALEH or any other
entities affiliated with or controlled by ENJOY
FOOD CORP., IMMORTAL RISE, INC. and/or
AHMAD SALEH,

                Plaintiff,                        **MEMORANDUM AND ORDER**
                                                                      11 CV 4360 (RRM) (LB)

-against-

IMMORTAL RISE, INC. d/b/a C-TOWN, AHMAD
SALEH and/or any other entities affiliated with or
controlled by IMMORTAL RISE, INC. and/or
AHMAD SALEH

                Defendants.

------------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

       Plaintiffs Amelia Hernandez, Edith Hernandez Rojas, and Juan Eduardo Hernandez[1] bring this action on behalf of themselves and all others similarly situated against defendants Immortal Rise, Inc. d/b/a C-Town ("Immortal Rise"), Ahmad Saleh, and/or any other entities affiliated with or controlled by Immortal Rise, Inc. and/or Ahmad Saleh, to recover unpaid overtime compensation, minimum wages, and "spread of hours" payments pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law. Plaintiffs seek an order conditionally certifying a class of similarly situated employees and authorizing plaintiffs to distribute their proposed Notice of Lawsuit to the class pursuant to

---

[1] Since the plaintiffs share the last name of Hernandez, the Court refers to plaintiffs by their first name for ease of identification.

§216(b) of the FLSA. The Honorable Roslynn R. Mauskopf referred plaintiffs' motion to me. Plaintiffs' motion is granted subject to the following modifications.[2]

## BACKGROUND

Defendant Immortal Rise, Inc. operates multiple supermarkets in New York including a C-Town supermarket located at 4705 Fifth Avenue, Brooklyn, NY 11220 ("C-Town Fifth"). (Docket entry 12, Am. Compl., ¶ 2.) Plaintiffs allege that defendant Saleh is an officer and owner of Immortal Rise, Inc. and exercises managerial authority at C-Town Fifth including managing day-to-day operations, making personnel decisions, organizing work schedules, setting employee wages, and maintaining employment records. (Am. Compl., ¶¶ 36-37.) Plaintiffs are former employees of Immortal Rise, Inc. (Am. Compl., ¶¶ 12-14; docket entry 19, Ans., ¶¶ 12-14.)

Plaintiff Amelia worked as a cashier at C-Town Fifth from November 2004 through September 2010. (Docket entry 26-2, Amelia Decl., ¶¶ 2-3.) She asserts that she typically worked six days a week for at least twelve hours a day, often without any breaks. (Id. at ¶¶ 5-6.) Although she regularly worked more than forty hours a week, Amelia alleges she received a flat weekly salary of $380.00 in cash, regardless of the number of hours she worked. (Id. at ¶¶ 4, 7.) Plaintiff Edith normally worked more than forty hours a week at C-Town Fifth from January 2002 until August 2011, first in the meat department and later as a cashier. (Docket entry 26-1, Edith Decl., ¶¶ 2-3, 7.) From 2002 to 2009, Edith worked at least twelve hours a day, six days a week. (Id. at ¶ 5.) Then from 2009 to 2011, she worked approximately six or eight hours a day, six or seven days a week. (Id. at ¶¶ 8-9.) She states that she originally received a flat weekly salary of $180 which increased to $400 during the course of her employment. (Id. at ¶ 4.) Both

---

[2] A Magistrate Judge may order the relief sought in this motion. See Patton v. Thomson Corp., 364 F. Supp. 2d 263, 265-66 (E.D.N.Y. 2005) (a magistrate judge may order conditional certification and class notice under the FLSA).

Amelia and Edith never received overtime pay. (Id. at ¶ 11; Amelia Decl., ¶ 8.) Additionally, if the cash register was ever short of money, the difference was deducted from plaintiffs' wages. (Edith Decl., ¶ 15; Amelia Decl., ¶ 12.)

C-Town Fifth employed plaintiff Juan as a grocery packager, stocker, and delivery person from March 2008 until September 2010. (Docket entry 26-3, Juan Decl., ¶¶ 2-3, 7.) Juan typically worked more than twelve hours a day, six days a week. (Id. at ¶ 5.) Although he regularly worked more than seventy hours a week, he alleges he never received time-and-a-half overtime wages. (Id. at ¶¶ 7-8.) Instead, regardless of the number of hours he worked, he earned a flat salary of $275 a week and an occasional daily tip of $20. (Id. at ¶ 4.)

Plaintiffs estimate that C-Town employed no fewer than sixty employees at any given time while they worked there. (Amelia Decl., ¶ 13; Edith Decl., ¶ 16; Juan Decl., ¶ 12.) Plaintiffs allege that they compared and discussed their wages with their co-workers and learned that C-Town similarly paid their co-workers below the minimum wage and denied them overtime pay as well. (Amelia Decl., ¶¶ 11, 14; Edith Decl., ¶¶ 14,17; Juan Decl., ¶¶ 11, 13.) Plaintiffs further assert that many of their co-workers are immigrants and are thus unaware of their right to fair wages or afraid to raise their claims against defendants. (Amelia Decl., ¶ 15; Edith Decl., ¶ 18; Juan Decl., ¶ 14.)

Plaintiff commenced this action on September 9, 2011, on behalf of themselves as well as other similarly situated past and present employees of Immortal Rise, Inc. at C-Town Fifth. (Docket entry 1.) Plaintiffs allege that defendants failed to pay them the statutory minimum wage, overtime compensation, and "spread of hours" wages. (Am. Compl. ¶ 25.) On August 14, 2012, plaintiffs filed the instant motion for conditional certification of collective action. (Docket entries 25.) Defendants oppose plaintiffs' motion and plaintiffs have replied. (Docket entry 28,

3

Defs.' Mem. of Law in Opp'n to Pls.' Mot. to Proceed as a Collective Action Under the FLSA ("Defs.' Opp'n"); docket entry 30, Pls.' Reply Mem. of Law in Further Supp. of the Mot. for Conditional Certification and Notice to the Class ("Pls.' Reply").)  On August 17, 2012, defendants moved for leave to file a sur-reply. (Docket entry 32.)  Defendants' motion was granted and defendants timely filed their sur-reply on August 24, 2012; plaintiffs filed their response, albeit untimely, on September 6, 2012.  (Docket entry 35, Decl. of Clemente Mestizo; docket entry 36, Pls.' Mem. of Law in Further Supp. of the Mot. for Conditional Certification and Notice to the Class, and in Resp. to Defs.' Sur-Reply.)

## DISCUSSION

### A. Conditional Certification for Collective Action

#### 1. The Legal Standard for Granting Conditional Certification

Plaintiff seeks conditional certification as a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA which provides in pertinent part that:

> An action . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citations omitted).  The "certification" of a FLSA collective action "is only the district court's exercise of the discretionary power, upheld in [Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)], to facilitate the sending of notice to potential class members."  Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010).  As such, "'certification' is neither necessary nor sufficient for the existence of a representative action

4

under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche Inc., 493 U.S. at 169). "[U]nlike class certification under Fed. R. Civ. P. 23, no showing of numerosity, typicality, commonality and representativeness need be made for certification of a representative action." Cuzco v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) (citations omitted) (internal quotation marks omitted). Rather, for conditional class certification under the FLSA, "[t]he similarly situated standard is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23." Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 643 (S.D.N.Y. 2010) (citations omitted) (internal quotation marks omitted).

Courts within this Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007); see also Myers, 624 F.3d at 554-555 ("[T]he district courts of this Circuit appear to have coalesced around a two-step method, a method which, while again not required by the terms of FLSA or the Supreme Court's cases, we think is sensible."). "The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." Lynch, 491 F. Supp. 2d at 368 (citations omitted). "During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." Id. (citations omitted). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555 (citations omitted).

The present motion concerns only the first step of the process. At this stage, plaintiff's burden is "minimal." Lynch, 491 F. Supp. 2d at 368. "[P]laintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Although only a modest factual showing is required, this standard "cannot be satisfied simply by 'unsupported assertions.'" Myers, 624 F.3d at 555.

2. Plaintiffs Make The Modest Factual Showing Required for Conditional Certification

In this case, plaintiffs allege that Immortal Rise, Inc. maintained a common policy or plan to not pay their employees the minimum wage, spread of hours wages, or appropriate overtime compensation. (Docket entry 27, Pls.' Mem. of Law in Supp. of Mot. for Conditional Certification and Notice to the Class ("Pls.' Mem.") 2.[3]) In support of the instant motion, plaintiffs submit their own sworn declarations as well as employment letters they received while employed at C-Town Fifth. (Docket entries 26-1-3, 31-1.) Plaintiffs allege that they consistently worked more than forty hours a week and were paid a flat weekly salary regardless of the number of hours they worked, denying them both minimum and overtime wages. (Edith Decl., ¶¶ 4, 7, 10-11, 13; Amelia Decl., ¶¶ 4, 7-8, 10; Juan Decl., ¶¶ 4, 7-8, 10.) Plaintiffs further assert that based on their observations and conversations with co-workers, they believe this practice to be widespread at C-Town Fifth. (Edith Decl., ¶¶ 12, 14, 17; Amelia Decl., ¶¶ 9, 11, 14; Juan Decl., ¶¶ 9, 11, 13.)

Defendants argue that plaintiffs have failed to meet the minimal burden required for conditional certification. First, defendants maintain that plaintiffs' evidence "consists entirely of inadmissible hearsay and conclusory statements" (Defs.' Opp'n 8.) Specifically, defendants

---

[3] The Court references the ECF page numbers listed on the top of each page.

contend that naming additional similarly situated employees is a "requirement" of a motion for conditional certification. (Id. at 10.) Admittedly, many cases granting conditional certification have been supported by affidavits which identify similarly situated employees by name. See, e.g., Rosario v. Valentine Ave. Disc. Store, Co., 828 F. Supp. 2d 508, 515 (E.D.N.Y. 2011) (stating that conditional certification is "regularly" granted where plaintiffs set forth an employer's violations and name similarly situated plaintiffs); Cano v. Four M Food Corp., No. 08-CV-3005 (JFB)(AKT), 2009 U.S. Dist. LEXIS 7780, at *17 (E.D.N.Y. Feb. 3, 2009) (considering plaintiffs' naming of co-workers as a factor in granting conditional certification). Nevertheless, none of the cases cited by defendants or uncovered in the Court's research have ever explicitly required plaintiffs to identify similarly situated employees by name to obtain conditional certification.

On the contrary, courts have conditionally certified collective actions under the FLSA where plaintiffs, based on their firsthand observations, identify an approximate class of similarly situated individuals. See Inglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (holding that plaintiffs had met the modest showing required under the FLSA where they alleged that "to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class"); Sipas v. Sammy's Fishbox, Inc., No. 05 Civ. 10319 (PAC), 2006 U.S. Dist. LEXIS 24318, at *9 (S.D.N.Y. April 24, 2006) (granting conditional certification based on plaintiff's allegations that there were approximately seventy-five other individuals working in a similar capacity). Plaintiffs in this case allege that they observed "no less than 60 employees" working at C-Town Fifth at any given time. (Amelia Decl., ¶ 13, Edith Decl., ¶ 16, Juan Decl., ¶ 12.) Plaintiffs further state that based on conversations with their co-workers and comparisons of their wages, they believe that other

employees suffered the same underpayment. (Amelia Decl., ¶ 14, Edith Decl., ¶ 17, Juan Decl., ¶ 12.) Plaintiffs' sworn affidavits make the modest showing required for conditional certification at this stage.[4]

Defendants also assert that plaintiffs are unable to meet the minimal evidentiary burden for certification since defendants' evidence controverts plaintiffs' claims of FLSA violations. (Defs.' Opp'n 11.) Defendants' argument raises a factual dispute, however "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this preliminary stage. Lynch, 491 F. Supp. 2d at 368 (citations omitted). Thus, the Court does not adjudicate the parties' competing evidence on this motion for conditional certification.

3. Scope of the Class

Defendants contest the scope of the plaintiffs' proposed class of similarly situated employees. Plaintiffs propose to direct notice of this lawsuit to: "[a]ll current and former employees of C-Town (located at 4705 Fifth Avenue, Brooklyn, New York) who performed work as cashiers, delivery persons, grocery packers, grocery stockers, and other similar supermarket related tasks from September 9, 2008 to the present. This does not include

---

[4] Defendants note that some courts have found similar allegations insufficient to meet the evidentiary requirements for conditional certification under the FLSA. (Defs.' Opp'n at 9-10) (citing Eng-Hatcher v. Sprint Nextel Corp., No. 07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009); Seever v. Carrols Corp., 528 F. Supp. 2d 159 (W.D.N.Y. 2007); and additional cases). However, the cases cited by defendant sought certification of a large class of employees working at multiple locations and were based on secondhand statements of violations at those locations. In such cases, courts have often denied certification as to all locations and instead limited certification to a single location or region for which there were firsthand accounts. See Lujan v. Cabana Mgmt., No. 10-CV-755 (ILG), 2011 U.S. Dist. LEXIS 9542, at *25-26 (E.D.N.Y. February 1, 2011) (limiting certification to New York area restaurants for which numerous affidavits were offered); Monger v. Cactus Salon & Spa's LLC, No. 08-CV-1817 (FB)(WDW), 2009 U.S. Dist. LEXIS 60066, at *4-5(E.D.N.Y. July 6, 2009) (limiting certification to the single salon location for which firsthand affidavits of underpayment had been submitted). In contrast, this case only seeks conditional certification of employees at one location, C-Town Fifth. Since the allegations regarding C-Town Fifth are based on firsthand, sworn statements of employees who worked at that specific location, the instant record sets forth sufficient facts to meet the lenient evidentiary burden for FLSA conditional certification.

supervisors, officers, executive, managerial, or administrative personnel." (Docket entry 26-4, Notice of Lawsuit ("Pls.' Notice") 1.)

Defendants argue that the prospective class must be limited to cashiers. (Defs' Opp'n 12-13.) Defendants allege that Immortal Rise, Inc. does not employ grocery packers and delivery workers, but rather subcontracts these functions to a third party. (Defs.' Opp'n 12). They further assert that Juan never worked for Immortal Rise, Inc.[5] (Id.) Defendants raise an issue of fact that is of no moment at this initial stage. Courts refuse to "prejudge defendants' status as an employer" since it is a "'contested area of fact requiring discovery' and not a basis for denying conditional certification." Lujan, 2011 U.S. Dist. LEXIS 9542, at *23-24 (quoting Realite v. Ark Rests. Corp., 7 F. Supp. 2d 303, 307 (S.D.N.Y. 1998)); see also Cuzco, 477 F. Supp. 2d at 634 (finding plaintiff's status as an employee or independent contractor to be an "inquiry [that] need not be answered in deciding this motion"). Consequently, defendants' request to eliminate delivery workers and grocery packers from the prospective class is denied.

Similarly, defendants request that plaintiffs' proposed class exclude employees who signed arbitration agreements with defendants. (Defs. Opp'n 12.) While the Court may eventually have to determine enforceability of these agreements, "the existence of arbitration agreements is irrelevant to class certification, because it raises a merits-based determination." D'Antuono v. C&G of Groton, Inc., No. 3:11cv33 (MRK), 2011 U.S. Dist. LEXIS 135402, at *13 (D. Conn. Nov. 23, 2011) (collecting cases). Therefore, the class shall not be restricted by any arbitration agreements at this time.

---

[5] While defendants now assert that Juan never worked for Immortal Rise, the Court notes that defendants admitted this fact in their answer. (Ans. ¶ 14.)

Defendants also dispute the broad inclusion of "all non-supervisory employees" in the prospective class (Defs.' Opp'n 13), [6] but defendants' objection is unfounded. It is well settled that given the "broad, remedial purposes of the FLSA," "parties may be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided they are subject to a common unlawful policy or practice." Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) (citations omitted) (internal quotation marks omitted); see also Lynch, 491 F. Supp. 2d at 369 (citations omitted) ("[F]actual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification."). Courts regularly grant certification to broad classes of employees and have done so in prior supermarket cases.

In Enriquez v. Cherry Hill Mkt. Corp., the Court certified a broad class of workers who "performed similar tasks, such as packaging and stocking shelves, receiving deliveries, cleaning the store, washing produce, arranging flowers, preparing foods, and in [sic] other grocer-related jobs" based on the affidavits of two grocery stockers. No. 10-CV-5616 (FB)(ALC), 2012 U.S. Dist. LEXIS 17036, at *2 (E.D.N.Y. Feb. 10, 2012); see also Cano, 2009 U.S. Dist. LEXIS 7780 at *28-29 (certifying a class of "current and former employees of the defendants, who have worked as shelf stockers, grocery baggers, food packers and wrappers, delivery truck unloaders and loaders, shopping cart retrievers, bathroom cleaners, and were part of the general maintenance staff"). Plaintiffs' affidavits in this case, like those in Enriquez, demonstrate that employees with a broad range of supermarket-related duties including cashiers, grocery packers, delivery workers, grocery stockers, and workers in the meat department, were all subject to the same FLSA wage violations. Therefore, the Court denies defendants' request to limit the class to

---

[6] As an initial matter, plaintiffs' proposed notice does not actually contain the phrase "all non-supervisory employees." The Court assumes that defendants' objection references the language "and other similar supermarket tasks" in plaintiffs' proposed notice.

cashiers and grants conditional certification of plaintiffs' proposed class of similarly situated employees.

### B. Notice of Lawsuit and Consent to Join Lawsuit Form

The Court next considers the content of the notice directed to potential opt-in plaintiffs. Courts have "broad discretion to craft appropriate notices" that effectuate the "overarching policies of the collective suit provisions" and provide employees with "'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (quoting Hoffman-La Roche Inc., 493 U.S. at 170). Plaintiffs submit a proposed notice of lawsuit and consent to join form[7] to which defendants' raise a host of objections. (Pls.' Notice; Defs' Opp'n 14-20.) The Court hereby adopts plaintiffs' proposed form, subject to the modifications discussed below.

1. Notice Period

Plaintiffs propose to send the notice of pendency to employees that worked for defendants within the three years preceding the commencement of this action. (Pls.' Notice 1.) Defendants request that the prospective class be limited to those employed by defendants in the two years preceding the date of this order. (Defs. Opp'n 10.) The Court grants in part and denies in part defendants' request.

The statute of limitations under the FLSA is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Plaintiffs allege willfulness in their complaint. (Am. Compl. ¶¶

---

[7] Plaintiffs' notice refers to both a "Consent to Join Lawsuit" form and a "Consent to Join" form. (Pls.' Notice 2.) The proposed form itself is titled "Consent to Join." (Pls.' Notice 4.) For the sake of consistency, the Court hereby amends the title of the consent form to "Consent to Join Lawsuit." The notice shall be modified to use this title throughout.

11

47, 52.) Defendants deny these allegations and urge the Court to adopt a two year period. (Ans. ¶¶ 47, 52; Defs.' Opp'n 14.) "Courts in this circuit have generally held that where willfulness is in dispute, a three year state of limitations applies at the conditional certification stage." Alvarez v. IBM Rests., Inc., 839 F. Supp. 2d 580, 587-88 (E.D.N.Y. 2012) (citations omitted); Guzelgurgenli v. Prime Time Specials, Inc., No. 11-CV-4549 (ADS)(WDW), 2012 U.S. Dist. LEXIS 113212, at *40-41 (E.D.N.Y. August 8, 2012) (citations omitted). Therefore, defendants' request for a two year period is denied; the notice period shall be for three years.

However, defendants accurately point out that any notice period generally shall be measured from the date of the Court's order granting plaintiffs' motion for conditional certification, not from the filing of the complaint. See Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM)(LMS), 2007 U.S. Dist. LEXIS 39105, at *26 n.5 (S.D.N.Y. April 26, 2007) (finding a three year period preceding the issuance of the notice "more in keeping with § 256(b)), *adopted*, 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 29, 2007); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice."). Accordingly, the notice shall be directed to potential opt-in plaintiffs who worked for C-Town Fifth in the three years preceding the issuance of the notice.

2. Opt-In Period

Plaintiffs' proposed notice provides a sixty-day opt-in period. (Pls' Notice 2.) Defendants seek to restrict the opt-in period to forty-five days. (Defs.' Opp'n 15.) There is little precedent for setting a forty-five day opt-in period; rather, a sixty-day notice period is "common practice under the FLSA." Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 61 (E.D.N.Y. 2011) (citations omitted); see also Hinterberger v. Catholic Health Sys., No. 08-CV-380S, 2009 U.S.

Dist. LEXIS 97944, at *38 (W.D.N.Y. October 20, 2009) (citations omitted) ("[C]ourts routinely set limits of sixty days for potential plaintiffs to opt in."). As such, the Court approves a sixty-day opt-in period in this case.

   3. Rights and Obligations of Opt-In Plaintiffs

Defendants seek to modify some of the information provided in the proposed notice of lawsuit regarding the rights and obligations of opt-in plaintiffs. First, defendants request that section four of the notice more clearly outline the consequences of the joining the action.[8] The only substantive difference between plaintiffs' and defendants' proposed language on this matter is defendants' reference to payment of costs. Courts in this district have found references to costs "unnecessary and potentially confusing" to opt-in plaintiffs. Sexton v. Franklin First Fin., Ltd., No. 08-CV-04950 (JFB)(ARL), 2009 U.S. Dist. LEXIS 50526, at *43 (E.D.N.Y. June 16, 2009). Such language may also pose "an in terrorem effect that is disproportionate to the actual likelihood the costs or counterclaim damages will occur." Guzman v. VLM, Inc., No. 07-CV-1126 (JG)(RER), 2007 U.S. Dist. LEXIS 75817, at *23-24 (E.D.N.Y. October 11, 2007). The Court denies defendants' request to include such language in this notice. Furthermore, the Court finds that "a neutral and non-technical reference to discovery obligations" best advises potential plaintiffs of the obligations of participation. Lujan, 2011 U.S. Dist. LEXIS 9542, at *39-40. Consequently, the parties shall include the following language in section four of the notice: "you may be asked to testify and provide information about the work you performed for defendants in order to help the Court decide whether you are owed any money."

---

[8] Plaintiffs' proposed notice states that class participants "may be asked to provide oral or written discovery and/or testify at trial in this matter." (Pls.' Notice 2.) Defendants wish to modify this section to specify that class members "may be required to (1) appear for depositions; (2) respond to written discovery; (3) testify at trial; and (4) pay costs to Defendants if they do not prevail." (Defs.' Opp'n 15.)

Defendants also request that the notice state that plaintiffs would be bound by any decision, judgment, or settlement, "whether favorable or unfavorable." (Defs. Opp'n 16.) The Court finds this to be a reasonable addition; therefore, section four of the notice shall read "If you choose to join this lawsuit, you will be bound by any ruling, settlement, or judgment entered in this case, whether favorable or unfavorable."

4. Defendants' Proposed Additions

Defendants propose three additions to the notice: (1) the inclusion of defendants' counsel's phone number in section seven of the notice, (2) a paragraph stating defendants' belief that collective action is unwarranted; and (3) the statement: "The issue of who is right and who is wrong has not yet been addressed by the Judge and the Judge has no opinion who is right or wrong." (Defs.' Opp'n 16-18.) Plaintiffs' proposed notice currently includes defendants' other contact information and plaintiffs raise no objection to the addition of defendants' counsel's telephone number. (Pls.' Notice 3.) Since "such information is routinely included in notices," the Court grants defendants' request to include their counsel's telephone number in the notice. Moore, 276 F.R.D. at 61 (citations omitted). On the other hand, the Court denies defendants' other two requests as redundant. The Court finds the general denial of liability and statement of the Court's neutrality included in plaintiffs' notice[9] sufficient to address defendants' concern that "class members be made aware of their position that it has not been established that any employee who worked for Immortal Rise was paid incorrectly." (Defs' Opp'n 16.)

---

[9] The first page of plaintiffs' proposed notice contains the following general denial of liability: "Defendants vigorously deny any wrongdoing and/or liability and deny that any employee was underpaid for his or her work at any time." (Pls.' Notice 1.) It also contains the following statement of the Court's neutrality: "No determination has been made that you are owed any minimum wages or overtime wages, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit." (Id.)

14

5. State Law Claims

Defendants' object to any reference to plaintiffs' state law claims since plaintiffs have not filed for class certification under New York labor law and such claims cannot be asserted as part of a collective action pursuant to §216(b). (Defs.' Opp'n 17.) While it is true that plaintiffs' state law claims cannot be addressed via this collective action, "there is not a per se rule against inclusion of such claims" in a FLSA collective action notice. Guzman, 2007 U.S. Dist. LEXIS 75817, at *21 (citations omitted). Instead, courts allow reference to state claims "[b]ecause that language may be relevant to potential plaintiffs with timely federal claims in deciding whether or not to opt in to the collective action." Lujan, 2011 U.S. Dist. LEXIS 9542, at *34 n.15 (citations omitted). Thus, plaintiffs' reference to state law claims in the notice shall remain with one modification. Plaintiffs requested, and were granted, the three-year notice period provided for by the FLSA, rather than the six-year period provided by state law. To ensure consistency and avoid confusion, the Court removes any reference to the six-year time period from plaintiffs' statement regarding any state law claims.

6. Anti-Retaliation Provision

Defendants assert that because there are no allegations of retaliation in the present case, the anti-retaliation language contained in the notice is inappropriate. (Defs. Opp'n 18.) Defendants offer no support for this position. To the contrary, courts regularly include anti-retaliation provisions in these notices even where plaintiffs raise no specific allegations of retaliation. See Rosario, 828 F. Supp. 2d at 525; Lynch, 491 F. Supp. 2d at 373. The Court thus approves plaintiffs' anti-retaliation language in the proposed notice.

7. Return of Consent to Join Lawsuit Forms

Plaintiffs' notice advises opt-in plaintiffs to send their consent to join lawsuit forms to plaintiffs' counsel. (Pls.' Notice 2, 4.) Defendants request the notice be changed to advise plaintiffs to send their consent to join lawsuit forms directly to the Court. Defendants' request is hereby granted; the notice and consent to join lawsuit form shall direct opt-in plaintiffs to mail their consent forms directly to the Clerk of Court. See Lujan, 2011 U.S. Dist. LEXIS 9542, at *45-46 (modifying the notice to require mailing to the Court since sending it to plaintiffs' counsel "implicitly discourages opt-in plaintiffs from selecting other counsel").

### C. Distribution & Publication of Notice

The Court now turns to the plaintiffs' proposed order of publication. (Docket entry 26-5, Proposed Publ'n Order ("Publ'n Order").)

1. Production of Class Member Information

Plaintiffs request the names, telephone numbers, and last known addresses of all prospective class members. (Publ'n Order, ¶ 2.) Defendants ask the Court to exclude production of class member telephone numbers to protect worker privacy and prevent against phone solicitation in violation of the New York Rules of Professional Conduct. (Defs.' Opp'n 19.) Courts generally grant production of names and addresses, but due to privacy concerns, the courts in this circuit are split over the propriety of requiring defendants to produce telephone numbers. See, e.g., Jacob v. Duane Reade, Inc., No. 11-CV-0160 (JPO), 2012 U.S. Dist. LEXIS 11053, at *29 (S.D.N.Y. Jan. 26, 2012) (granting production of addresses, telephone numbers, email addresses, work locations, and dates of employment); Rosario, 828 F. Supp. 2d at 522 (granting production of telephone numbers as well as names, last known addresses, and dates of employment). But see, e.g., Gordon v. Kaleida Health, No. 08-CV-378S, 2009 U.S. Dist.

LEXIS 95729, at *31 (W.D.N.Y. Oct. 13, 2009) (denying plaintiffs' request for phone numbers and other personal information); Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (limiting discovery to names and addresses). Nevertheless, the courts in this district "routinely order discovery of names, addresses, and telephone numbers in FLSA actions." Ack v. Manhattan Beer Distribs., No. 11-CV-5582 (CBA), 2012 U.S. Dist. LEXIS 67883, at *20 (E.D.N.Y. May 15, 2012) (citations omitted); see also Fang v. Zhuang, No. 10-CV-1290 (RRM)(JMA), 2010 U.S. Dist. LEXIS 133618, at *2 (E.D.N.Y. Dec. 1, 2010). Since defendants fail to present any compelling reason for the Court to exercise particular caution in this case, and plaintiffs state that all provided information shall remain "confidential" (Publ'n Order ¶ 2), the Court finds no reason to exclude discovery of opt-in plaintiff telephone numbers at this time. Defendants shall provide plaintiffs' counsel with the names, last known addresses, and last known phone numbers of all potential class members by October 3, 2012.

2. Posting of Notice

Plaintiffs initially propose two methods of publication: first class mail and posting of the notice at C-Town Fifth. (Publ'n Order ¶¶ 1, 4). Defendants oppose the simultaneous use of both methods arguing that posting is redundant since the notice will be mailed to all current employees. (Defs. Opp'n 20.) While the Court recognizes the possibility of some duplication, "[p]osting of notice is a reasonable means of assuaging the vagaries of notice by mail, and would not unduly burden the defendants." Enriquez, 2012 U.S. Dist. LEXIS 17036, at *12; see also Whitehorn, 767 F. Supp. 2d at 449 (citations omitted) ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."). Accordingly, by October 12, 2012 defendants shall post the notice of lawsuit and consent to join lawsuit forms at C-Town Fifth in a location frequently

visited and easily accessible to employees. Defendants shall advise plaintiffs' counsel in writing by October 15, 2012 of the exact location of the posting.

3. Translation of Notice into Spanish

Plaintiffs propose translating and publishing the notice and consent to join lawsuit form in English and Spanish. (Publ'n Order ¶ 3.) Defendants do not object; therefore, the revised notice and consent form shall be translated and published in English and Spanish.

## CONCLUSION

Accordingly, plaintiffs' motion for conditional certification of a collective action pursuant to §216(b) of the FLSA is hereby granted. Plaintiffs' counsel shall amend the notice in accordance with this order and shall electronically file a revised notice of lawsuit and consent to join lawsuit form in English and Spanish by 3:00 p.m. on October 3, 2012.[10] Defendants shall produce the names, last known addresses, and telephone numbers of potential opt-in plaintiffs to plaintiffs' counsel by the same date.

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: September 24, 2012
       Brooklyn, New York

---

[10] The parties shall mutually agree upon a Spanish translation to be filed by this date.